UNITED STATES DISTRICT COURT        SOUTHERN DISTRICT OF TEXAS

Randell Glen Laws,         §
                                   §
             Plaintiff,      §
                                   §
*versus*                        §         Civil Action H-07-4472
                                   §
Nathaniel Quarterman,    §
                                   §
             Defendant.    §

## Opinion on Denial of a Writ of Habeas Corpus

1.     *Introduction.*

      In 2004, Randell Glen Laws was sentenced to ninety-nine years in a Texas prison for a murder in 1987. He has petitioned for a writ of habeas corpus. The court will deny Laws's petition because he was not prejudiced by the twenty-three month delay in bringing him to trial or by his counsel's performance.

2.     *Background.*

      In August of 1987, Lyle Sacry's dead body was found in his trailer. He had been beaten with a baseball bat and shot.

      While the police were at the trailer, four people arrived in a car: (a) Kathy Seefong, Sacry's stepdaughter, (b) Timothy Seefong, Sacry's stepson, (c) Glenn Shaw, a family friend, and (d) Randell Laws, the stepdaughter's boyfriend. Laws was the only Houston resident; the others had recently come from West Virginia. The police questioned them at the scene and at the police station the next day.

      Although the police suspected Laws, he was not arrested. All four were released without being charged. Two months later, the police thought they had enough evidence to charge Laws for the murder, but the Harris County District Attorney did not accept the charges.

In 2001 – fourteen years later – the Harris County Sheriff re-investigated the murder. This time Glenn Shaw wanted to incriminate Laws. On September 3, 2002, the police arrested Laws in Florida. They also arrested Sacry's former wife, Rita Sacry, and his stepdaughter, Kathy Seefong Brandon, in West Virginia. Sacry and Brandon fought extradition to Texas; Laws did not. Once in Texas, Laws was detained without bail.

Laws's arraignment was originally set for October 15, but it was repeatedly postponed to November 4, November 18, and December 17, 2002. Laws's counsel, Randall Ayers, says that two times were for Texas to prepare and present its case to the grand jury for indictment, and the other time was because Ayers was in another trial.

After Laws was indicted, his trial was set for trial January 22, 2003. It was later reset to February 19, March 12, and May 27. At least one of the delays was to extradite Sacry's co-defendants, Brandon and Sacry. They were eventually extradited to Texas in August of 2003.

In May of 2003, the court set Laws's bail at $50,000, but Laws was unable to pay it. That same day, Laws moved for either a trial or a dismissal. By that time, he had been in jail for nine months. Although Laws said that he had been "both ready and eager to go to trial" since he was arrested, he concurrently moved for discovery. The court set the trial for September.

Dissatisfied, Laws wrote to the judge in July asking for an earlier trial date. He said that he had cancer, had undergone surgery in prison, and feared that inadequate medical treatment was reducing his chances of survival. Laws said that the cancer was rapidly spreading and could kill him within weeks or months. He complained that the frequent court delays were causing his wife and children financial hardship. Laws also expressed frustration that his lawyer did not heed his pleas to oppose more vigorously Texas's requests for postponement.

In September, the trial date was reset to November. In November, the trial was reset to February of 2004. Although Laws said that he was ready and opposed the continuance, both he and Ayers signed the resetting agreement. Right before the February setting Ayers moved for additional fees for an investigator, saying that an investigation was "essential . . . to the full, proper, and effective representation" of Laws.

Two weeks later, the trial date was again reset to June. Although Ayers signed this agreement, in place of Laws' signature was the note: Off Docket/in custody. Ayers later told the court that Laws had objected to the postponement. The trial court gave no reason for these continuances, and the parties did not file written motions for them. Ayers says that the

continuances were because the prosecutors and the trial court were in other trials or preferentially set for trial in other cases. The state does not say that Laws was responsible for these continuances.

On March 4, 2004 – ten months after Laws' first motion for a speedy trial – Laws mailed handwritten motions to the district court and the court of appeals requesting that his case be dismissed due to the delay. Ayers also moved a second time for a speedy trial, seeking a dismissal of the indictment. The trial court denied the motion the day it was filed.

On March 25, the court approved a fourth and final continuance, postponing trial to July 29, 2004. The record does not shows a reason for the delay, but Ayers says that it was because the prosecutor was preferentially set for trial in another case. Although both Laws and Ayers signed the agreement, Laws filed a federal petition the next day alleging that his rights had been violated. It was dismissed because he had not yet appealed his state claim.

Laws's trial began on July 29, almost twenty-three months after his arrest. After two days of testimony, the jury found Laws guilty and sentenced him to ninety-nine years in prison. With the assistance of new counsel, Layton Duer, Laws appealed his conviction. On appeal, Duer said only that the evidence introduced at trial was insufficient to support Laws's conviction. The state court of appeals affirmed; the Court of Criminal Appeals declined discretionary review.

3.   *Federal Appeal.*

After the appealing of his state claim was dismissed, Laws filed this petition on December 17, 2007. Federal court review is limited to claims that were "adjudicated on the merits in State court proceedings." Relief may only be granted if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."[1]

---

[1] The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. 2254(d) (2006); § 2254(d)(1).

4.      *Claims.*

Laws's petition raises five claims under the Constitution: (a) denial of a speedy trial, (b) denial of an examining trial, (c) insufficient evidence, (d) ineffective counsel, and (e) ineffective appellate counsel.

5.      *Prompt Trial.*

Laws's constitutional speedy trial claim will be reviewed de novo.      [2]   The Sixth Amendment to the United States Constitution guarantees an accused a speedy public trial. The court considers: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the prejudice to the defendant caused by the delay.

Laws was arrested in September 2002, and was indicted in December. He first asserted his right to a speedy trial on May 27, 2003. The court set Laws's trial for September 29, 2003. It was reset four times.[3]  On March 9, 2004, Laws moved to dismiss based on speedy trial grounds. It was denied the same day. Laws was tried in July of 2004, fourteen months after he first asserted his right.

A.      *Prejudice.*

The prejudice to the defendant caused by the delay has three interests: (1) to prevent oppressive pretrial incarceration, (2) to minimize the anxiety and concern of the accused, and (3) to limit impairment of the defense.[4]  Laws has not shown evidence of prejudice.

(1)     *Oppressive Pretrial Incarceration.*

Laws says that he suffered oppressive pretrial incarceration because he was deprived of his liberty and his inability to work caused his family great financial difficulty.

Laws was tried, found guilty of murder, and sentenced to 99 years. His family and his relationship with them have been negatively impacted by his confinement. This is only natural

---

[2] *See Cone v. Bell*, 129 S. Ct. 1769, 1784 (2009).

[3] Clerk's Record at 57 (reset to November 2003)*Id.* at 58 (reset to February 2004); *Id.* at 62 (reset to June 2004); *Id.* at 83 (reset to July 2004).

[4] *Id.* at 531.

-4-

when a husband and a father is imprisoned for murder. The situation would not have improved had Laws been tried and convicted any sooner – nor would he have recovered his liberty.

      (2)   *Pretrial Anxiety.*

Laws says that his pretrial imprisonment caused him great anxiety – amplified by his cancer.

Simply living "under a cloud of suspicion and anxiety" while awaiting trial does not prove prejudice.[5] Laws has presented no evidence demonstrating that his anxiety was more extreme than what would naturally be expected to accompany a person awaiting trial.[6]

Laws had cancer during his pretrial incarceration. He was diagnosed in March of 2003; he underwent surgery in May. This was not caused by his imprisonment. In July of 2003, Laws complained that the county's "dangerously slow medical response time" had "drastically reduced" his chance of survival and that the cancer could kill him within a matter of weeks, or at best months.[7] However, six years later, the very-much-still-alive Laws contradicted himself by admitting that after his surgery he received treatment five days a week for nine months at M.D. Anderson.[8]

      (3)   *Defense.*

Despite having recited vague conjectures several times that he was being "prejudiced and harmed" by the delay because potential witnesses and evidence were becoming unavailable, Laws has provided no evidence of actual prejudice. He has been unable to point to any important witnesses who disappeared or material evidence that was lost due to the delay. The record actually indicates that the passage of time might have helped Laws. For example, two

---

[5] *See Barker*, 504 U.S. 534.

[6] *See Goodrum*, 547 F.3d at 263.

[7] Clerk's Record at 55.

[8] Dkt. 39, Ex. B at ¶ 9.

prosecution witnesses admitted that their memories had faded and that they could no longer identify Laws as he sat in the courtroom.[9]

Loss of memory "is not always reflected in the record because what has been forgotten can rarely be shown," and there is a general presumption that the prejudice caused by pretrial delay intensifies over time.[10] However, the threat of a twenty-two-month delay to Laws in a case that is already fifteen years old is weak.

Laws has not shown that he was in any way "hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense."[11] Starting in May of 2003, Laws said that he was "ready and eager" for trial. He repeated this several months later, and again in March of 2004. Laws's actions – such as requesting additional discovery and funds for an investigation – contradict his statements of actual readiness for trial. Even if the court ignored Laws's statements and accepted that he was still preparing for trial, Laws has not shown that his preparation was hindered by his incarceration.

Because Laws did not suffer from oppressive pretrial incarceration or damage to his defense caused by the passage of time, he was not prejudiced by the delay. This factor does not weigh in his favor. Without showing prejudice, Laws has no injury to redress under the Constitution.

B.      *Length.*

Not every post-indictment delay between arrest and trial calls for Sixth Amendment scrutiny. Courts often require an inquiry when the delay approaches one year.[12] Some courts have viewed a delay between one and five years as weighing in favor of the defendant.[13] Most

---

[9] TT, Vol. 3 at 140 (testimony of Detective Ronald Phillips, Sr.); *id.* at 198 (testimony of Detective Michael Parinello).

[10] *Barker*, at 532.

[11] *Id.* at 533.

[12] *See United States v. Bergfeld*, 280 F.3d 486, 488 (5th Cir. 2002); 5 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 18.2(b) (3d ed. 2008).

[13] *Goodrum v. Quarterman*, 547 F.3d 249, 258 (5th Cir. 2008) (two-and-a-half year delay on aggravated assault charges).

courts consider delays in this range only as a threshold test, and require further inquiry of whether the delay was reasonable under the circumstances. Laws' delay of twenty-two months is not in itself indicative of prejudice, but does trigger a full inquiry.

C.     *Reasons for the Delay.*

The government must justify the delay. There are three categories of delay. First, deliberate attempts to delay the trial to gain a tactical advantage or hamper the defense weigh heavily against the government. Second, more neutral reasons such as negligence, court congestion, or an understaffed prosecutor's office weigh against the government. Finally a valid reason for the delay will not weigh against the government.[14] If the record is silent and the government offers no reason for the delay, it will be placed in the neutral category and weigh against the government, though not heavily.[15]

The record does not suggest that the delay was intentional to gain a tactical advantage over Laws. The record suggests that Texas was waiting on witnesses. Laws's two co-defendants were not extradited to Texas until eleven months after his arrest. The resetting agreement from March of 2003 had a note: waiting on C-defs to be brought to Texas.[16] Both Laws and Ayers have confirmed that the prosecution did not want to go to trial until the witnesses could be extradited.[17] Waiting on a missing witness excuses a delay.[18] The co-defendants, Sacry and Brandon, were both introduced as witnesses at Laws's trial.[19] Postponing until they could be extradited to Texas was a valid reason for the delay and does not weigh in Laws's favor.

---

[14] *Barker,* 407 U.S. at 531.

[15] *United States v. Cardona,* 302 F.3d 494, 498 (5th Cir. 2002).

[16] Clerk's Record at 19.

[17] Clerk's Record at 54; Dkt. 39, Ex. A at ¶ 6.

[18] *Barker,* 407 U.S. at 531. *See also United States v. Lovasco,* 431 U.S. 783, 791 (1977) (postponement of indictment).

[19] Dkt. 39, Ex. A., at ¶ 7.

The witnesses do not fully explain the delay because the court granted Laws's speedy trial motion in March of 2003, before their arrival. The delay between the arrival of the witnesses and Laws's trial was less than a year. This is not even enough to trigger a full speedy trial inquiry.

The record does not explain the rest of the delays. Ayers says that the postponements from September 2003 to July 2004 were because of conflicts with the prosecutor's trial schedule.[20] Normally, heavy caseloads and docket congestion weigh against the government. This ten month delay weighs lightly against Texas.

Even without the complications of a fifteen year gap, trials involve a great deal of preparation, such as collecting witnesses and opposing pretrial motions, and the court attaches great weight to these considerations.[21] This was a serious case – a murder trial with three defendants. It should be granted more tolerance for delay than a less complicated trial, like an ordinary street crime.[22]

Considering the three factors contributing to the delay, and the absence of evidence suggesting intentional delay by the government to gain a tactical advantage at trial, the delay weighs only lightly in Laws's favor.[23]

D.     *Assertion of the Right.*

Laws consented to each delay. One agreement had a note on it – defense ready – opposes continuance – but two months later, the defense moved for additional fees to continue preparing their case. The only resetting agreement that Laws did not sign was filed two weeks after that request, and he consented to the another delay four months later.

Laws first moved for a speedy trial in May of 2003 saying that he was ready for trial. He simultaneously moved for discovery, in limine, for notice of impeachment of evidence, and to

---

[20] Dkt. 39, Ex. A at ¶ 13.

[21] *Doggett v. U.S.*, 505 U.S. 647, 656 (1992).

[22] *Barker*, 407 U.S. at 531 (compared delay for street crime with delay for complex conspiracy charge).

[23] *See Neal*, 27 F.3d at 1043.

set bond.[24]  A motion for an immediate trial filed in tandem with motions for discovery and other relief undermines the defendant's assertion of his rights.[25]

Laws continued to prepare actively for trial during the next eight months.  In January of 2004 – over two years after Laws had been arrested and only seven months before his trial – Laws moved for additional fees for an investigator whose services were "essential" for his "full, proper, and effective representation."[26]

Laws did not move a second time for a speedy trial until March of 2004.  By then, there had been nine unopposed resettings.  The impetus for the prior speedy trial motion was circumspect, and Ayers had sought additional funding for investigative services even while opposing the tenth reset.[27]  Laws's motion was denied the same day.

Laws's assertion of his right to a speedy trial does not weigh in his favor.

E.      *Balancing of Factors.*

Only two of the four factors weigh lightly in favor of Laws; the other two weigh in favor of the state.  Laws has failed to show evidence of any prejudice caused by the delay.

In most speedy trial cases where the government was responsible for more than a year's trial delay, the claim was rejected because (1) the petitioner did not assert his right, or (2) the defendant was not prejudiced.  This case is both.

The right to a speedy trial secures rights to a defendant, but it does not preclude the public's right of justice.[28]  To protect the right to speedy trial, courts are willing to allow a defendant who may be guilty of a serious crime go free without a trial because this is the only possible remedy in such a case.

Laws's guilt is no longer in question.  He has been convicted of murder and sentenced. He has identified nothing in the delay to show that the outcome of his trial would have been

---

[24] *See Knox v. State*, 934 S.W.2d 678, 681 (Tex. Crim. App. 1996).

[25] *U.S. v. Perez*, 489 F.2d 51  (5th Cir.  1973) (three year delay excused).

[26] Clerk's Record at 59.

[27] Clerk's Record at 9, 10, 11, 13, 14, 18, 19, 50, 57, 59.

[28] *Beavers v.  Haubert*, 25 U.S.  77, 87 (1905).

any different had it been delivered sooner.[29] This right is meant to protect the innocent – not to allow a person to go free when he has been given a fair trial and found guilty of a heinous crime by his peers.

F.      *Procedural Bar.*

Laws's speedy trial claim is procedurally barred.  A writ of habeas corpus may not be used for claims that could have been raised on direct appeal.[30] This is a record claim that Laws failed to raise on direct appeal.  It is procedurally defaulted in this forum.

Laws's claim of a denial of his Sixth Amendment right to a speedy trial is procedurally barred and rejected.

6.      *Ineffective Assistance of Appellate Counsel.*

The state courts rejected Laws's ineffective assistance of appellate counsel claim on the merits.  This court may only overturn the ruling if it is clearly unreasonable.[31]

Ineffective assistance of trial counsel is measured by a two-part standard.  First, the petitioner must prove that counsel's performance was deficient – falling below an objective standard of reasonableness.  The petitioner must overcome a strong presumption that counsel performed reasonably. Second, the petitioner must show that counsel's performance prejudiced him. For example, if counsel had not performed deficiently, there is a reasonable probability – "a probability sufficient to undermine confidence in the outcome" – that the result of the proceeding would have been different.  Judicial scrutiny is highly deferential of counsel's performance when determining if he had a sound trial strategy at the time.[32]

For appellate counsel, the standard collapses into a single inquiry.  An appellate lawyer is deficient if he does not raise a meritorious argument – one that has a chance of being successful – based on directly controlling precedent. [33]  An appellate lawyer's deficiency is

---

[29] *See Schaetzle v.  Cockrell, 343 F.3d 440, 448-49 (5ᵗʰ Cir.  2003).*

[30] *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex.  Crim.  App.  1996).

[31] *See* 28 U.S.C. § 2254(d)(1) (Anti-Terrorism and Effective Death Penalty Act).

[32] *Strickland v. Washington,* 466 U.S. 668, 688-89 (1984).

[33] *See United States v. Phillips,* 210 F.3d 345, 348 (5th Cir. 2000).

prejudicial only if there is a "reasonable probability" that the defendant would have won the appeal had the argument been raised.[34]  The defendant must "affirmatively prove" prejudice.[35]

The only issues raised by Duer on direct appeal were four points of error challenging the sufficiency of the evidence to support Laws's conviction.  Duer said that the evidence was insufficient as a matter of both law and fact to prove that Laws had: (a) caused Sacry's death, and (b) intended for any individual to cause Sacry's death.[36]

Laws's vague complaints that Duer did not raise "blatantly arguable issues" on appeal are conclusory, and they fail to warrant relief under the deferential standard.  Laws fails to identify an act or omission indicating that Duer did not act reasonably.  Laws now claims that he was referring to Duer's failure to raise a speedy trial claim.  Even construing Laws's *pro se* habeas petition liberally – assuming he was referring to this claim – it is without merit.

This claim had already been raised and denied twice pretrial.  Duer was not required to raise every nonfrivolous issue that might be pressed on appeal.[37]  Laws has presented this argument to the courts, and they have rejected it.  Duer was entitled to use his professional judgment and not raise this claim again.  Even if Laws's speedy trial claim was not procedurally barred in this forum, it would fail on the merit.

Relief is possible only if the state court's decision was contrary to or was an unreasonable application of federal law.  This is not the case.  Laws is not entitled to relief for ineffective assistance of counsel, and his motion is denied.

7.    *Examining Trial.*

Neither the United States Constitution nor federal law guarantees an accused the right to an examining trial.[38]  In Texas, the accused in a felony case has the right to an examining

---

[34] See *United States v. Williamson*, 183 F.3d 458, 463 (5th Cir. 1999).

[35] *Strickland*, 466 U.S. at 693.

[36] See Brief for Appellant at 15-16 ("Summary of the Argument").

[37] See *Jones v. Barnes*, 463 U.S. 745, 751-53 (1983).

[38] See *Snowden v. Collins*, No. 92-1991, 1994 WL 57595, at *1 (5th Cir. Feb. 17, 1994) (citing *Texas v. Reimer*, 678 F.2d 1232, 1233-34 (5th Cir. 1982)).

trial, but it ends once the person has been indicted.[39]  Laws was indicted on December 2, 2002. Laws's examining trial claim is denied.[40]

This claim is procedurally barred.  It is a record claim that should have been raised on direct appeal, yet Laws raised this claim for the first time in his habeas application.  The Court of Criminal Appeals said this when it denied Laws's application.  A federal court may not review a claim if the last state court to consider it denied relief based on a state procedural default.[41] Because the state court expressly rejected this claim on procedural grounds, it is barred from being raised in federal court.

This claim is dismissed.

8.    *Insufficient Evidence.*

A court may grant an insufficient evidence claim only if, after viewing all the evidence "in the light most favorable to the prosecution," it determines that no rational trier of fact could have found the defendant guilty.[42]  The Texas First Court of Appeals, the last court to review the merits of Laws's insufficient evidence claim, found that the testimony of three witnesses—Glenn Shaw, Coy Reaves, and Andy DeLewis—was sufficient to convince a rational jury that Laws was guilty of murder.

First, Shaw and Reaves testified that Laws confessed to them that he had committed the murder.  Admittedly, both Shaw and Reaves had credibility problems.  Shaw lied in his first interview with the police and waited fourteen years before telling them about Laws's confession. Reaves was a convict with a lengthy criminal history who was motived to lie so the State would dismiss its pending charges against him.  However, the jury knew this.  As the trier of fact, it was entitled to believe or not believe their testimony as it saw fit.

Second, Andy DeLewis, the property manager of the trailer park in 1987, testified that he saw a gold Chevrolet car in the park on August 27, 1987 – one of several days Sacry could have been murdered.  He also testified that the day after Sacry's body was discovered a man and

---

[39] *State ex rel. Holmes v. Salinas*, 784 S.W.2d 421, 427 (Tex. Crim. App. 1990).

[40] *See* 28 U.S.C. § 2254(a)

[41] *Coleman v. Thopmson*, 501 U.S. 722, 729 (1991).

[42] *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

a woman arrived in the same gold car with a U-Haul trailer attached to it, and removed some furniture from the trailer. This was consistent with Reaves' testimony: Laws had told him that he owned a U-Haul trailer and parked his gold Chevrolet in the park the day he murdered Sacry.

Laws's criticisms of the court of appeals's decision amount to little more than an argument that the jury should not have been persuaded by this evidence. Among other things, Laws points to (1) Shaw and Reaves's credibility problems, (2) the implausibility of their testimony, (3) the lack of eyewitnesses to the murder, (4) the lack of physical evidence tying him to the murder, and (5) his willingness to return to Texas to contest the charges against him. These points are not without logical force and might have been sufficient to sway another jury. But this does not mean that the jury acted improperly or unreasonably in weighing the evidence and convicting Laws.

It was not unreasonable that the court of appeals's rejected Laws's insufficient evidence claim. Viewed in the light most favorable to the prosecution, the testimony of Shaw, Reaves, and DeLewis was sufficient to convince a rational jury that Laws was guilty of Sacry's murder. The court denies this claim.

9.    *Ineffective Assistance of Trial Counsel.*

In his state habeas application, Laws said that Ayers was ineffective because he failed to (a) insist on an examining trial, (b) more vigorously assert Laws's right to a speedy trial, (c) more aggressively point out weaknesses in the testimony of the State's witnesses, and (d) object to hearsay testimony. Laws's federal habeas petition, his cross-motion for summary judgment, and his response to the State's motion for summary judgment assert the same deficiencies.

Laws's trial counsel was not ineffective, and he has presented no evidence that more effective counsel would have resulted in a different outcome.

A.    *Examining Trial.*

Ayers was less than diligent in asserting Laws's right to an examining trial, especially since Laws had been in prison for three months by the time the grand jury indicted him. But even if Laws had received and prevailed at an examining trial, the State would have been free to obtain an indictment against him. They did. Because Texas would have prosecuted Laws with or without an examining trial, Ayers's failure to assert that right did not prejudice him.

B.      *Speedy Trial.*

Ayers did not fail to assert Laws's right to a speedy trial.  On the contrary, he filed two motions for a speedy trial in the trial court, and he objected on the record to the continuance granted in November 2003.

Laws contends that these efforts were not vigorous enough; the record reflects his dissatisfaction at the time.  On several occasions, Laws took matters into his own hands, filing letters and *pro se* handwritten motions with the district court and the court of appeals requesting dismissal on speedy trial grounds.  He even filed a  *pro se* federal habeas petition alleging a speedy trial violation in March 2004.

But Laws's subjective perception of Ayers's actions is not proof of deficient performance.  Although Ayers did not file a motion for a speedy trial until May 27, 2003 – over nine months after Laws was arrested – the Texas Court of Criminal Appeals has indicated that a speedy trial claim cannot be granted unless eight months or longer have passed without trial.[43]  Ayers did not act unreasonably in waiting nine months before initially asserting Laws's right to a speedy trial.

Ayers's nearly ten month delay before filing the second motion for a speedy trial in March 2004 is less understandable, especially given Laws's own efforts to obtain a speedy trial in the interim.  But even if his delay was deficient, it did not prejudice Laws because the trial court denied his second motion for a speedy trial.  Moreover, once the court denied the second motion for a speedy trial, there was nothing else Ayers could have done to assert Laws's right to a speedy trial because Texas law forbids interlocutory appeals from the denial of a speedy trial motion.[44]

C.      *State Witnesses.*

Ayers did point out weaknesses in the testimony of the State's witnesses; especially for the State's three most important witnesses: Shaw, Reaves, and DeLewis.

For Shaw, Ayers pointed out that he had lied to the police and had not told them about Laws's confession – casting doubt on whether Shaw's account was true.  In his closing

---

[43] *Harris v. State,* 827 S.W.2d 949, 956 (Tex. Crim. App. 1992).

[44] *See Ordunez v. Bean,* 579 S.W.2d 911, 913-14 (Tex. Crim. App. 1979).

-14-

argument, Ayers highlighted Shaw's selective memory and lies to the police. He remarked that it was incredible that Rita and Kathy would never have asked Shaw to kill Sacry, considering that they had asked many of their other friends to kill him and had known Shaw for along time. Finally, Ayers argued that Shaw was the likely murderer because Sacry was found dead around the same time Shaw arrived in Houston.

For Reaves, Ayers cast doubt on his credibility by pointing to his long criminal history and motive to lie to have the State dismiss its pending charges against him. He noted that Reaves's testimony was highly suspicious, suggesting that Reaves had been coached by the prosecution or had stolen information from Laws's case file while in prison. Ayers also argued that if Laws was as really as talkative as Reaves had made him seem, Laws would have confessed to other inmates – yet only Reaves had come forward to testify.

For DeLewis, Ayers got him to admit on cross-examination that the trailer park was large and routinely had vehicles coming and going, insinuating that the gold car could have belonged to anyone.

When it was not in Laws's best interest to rigorously question a witness, Ayers did not. He did what was best for his client. He did not vigorously cross-examine Carolyn Abshire, James Peetz, or Robert Hales about their testimony that Rita and Kathy routinely asked people to kill Sacry because their testimony supported Laws's theory that they had recruited Shaw as the murderer. For the police officers who testified, Ayers elicited admissions that no physical evidence tied Laws to the murder and that Laws cooperated in the 1987 investigation by talking to the police and giving them samples of his blood and shoe prints.

Nothing in the record supports Laws's contention that Ayers did not point out weaknesses in the State's case. The record shows the opposite.

D.    *Hearsay Testimony.*

Laws said his lawyer was ineffective because he missed important objections to hearsay. After a careful review of the trial transcript, there was only one notable instance in which Ayers failed to object to hearsay. A large part of Carolyn Abshire's testimony consisted of her account of a phone call with Rita. Abshire's discussion of what Rita told her during that call was clearly hearsay.

It was in Laws's interest for Ayers not to object. He needed to establish that Rita had recruited other people to kill Sacry in order to support the defense's theory that Shaw was the

likely murderer; Abshire's hearsay testimony supported that theory.  Ayer's failure to raise a hearsay objection was not deficient performance.

10.    *Conclusion.*

The trial of Randell Laws was anything but speedy.  It took place seventeen years after the crime and nearly two years after Laws's arrest.  However, there is no evidence that this delay was intentional or caused petitioner prejudice.  Laws was given a fair trial.  He has not proven that more effective trial or appellate counsel would have resulted in a speedier trial or different proceedings.

Laws's petition for a writ of habeas corpus will be denied.

Signed on October 7, 2011, at Houston, Texas.

Lynn N. Hughes
United States District Judge